**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EVON GONZALEZ,** | NO. EDCV 06-00452-MAN |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| | **AND ORDER** |
| **MICHAEL J. ASTRUE,**<br>**Commissioner of the**<br>**Social Security Administration,** | |
| **Defendant.** | |

Plaintiff filed a Complaint on May 12, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of Plaintiff's application for supplemental security income ("SSI"). On June 7, 2006, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on February 20, 2007, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and directing the payment of benefits or, alternatively,

---

[1]   Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

remanding the case for a new hearing; and Defendant requests that the
Commissioner's decision be affirmed.  The Court has taken the parties'
Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for SSI on August 1, 2003.
(Administrative Record ("A.R.") 56-58.)  Plaintiff claims to have been
disabled since June 30, 1993, due to emotional problems, back injury,
right leg injury, migraine headaches, severe depression, anxiety,
inability to concentrate, fatigue, breathing problems, and fibromyalgia.
(A.R. 56, 73-74, 112, 119.)  She has no past relevant work experience.
(A.R. 20.)

The Commissioner denied Plaintiff's claim for benefits initially
and upon reconsideration.  On December 9, 2005, Plaintiff, who was
represented by counsel, testified at a hearing before Administrative Law
Judge James S. Carletti("ALJ").  (A.R. 269-85.)  On March 24, 2006, the
ALJ denied Plaintiff's request for SSI (A.R. 14-21), and the Appeals
Council subsequently denied Plaintiff's request for review of the ALJ's
decision (A.R. 5-8).

### SUMMARY OF ADMINISTRATIVE DECISION

In his March 24, 2006 written decision, the ALJ found that
Plaintiff had not engaged in substantial gainful activity during the
period at issue.  (A.R. 16.)  The ALJ also found that Plaintiff has
severe physical impairments consisting of "status post open reduction

2

and internal fixation of right ankle and foot fractures." (A.R. 18.) The ALJ further found that Plaintiff's "alleged fibromyalgia is not 'severe' as defined in the Regulations," and her alleged depression and anxiety do not constitute severe mental impairments. (A.R. 18-19.) The ALJ further found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (A.R. 19.) The ALJ found that Plaintiff was a "younger individual age 18-44." (A.R. 20.) In addition, the ALJ found that Plaintiff's allegations were not totally credible. (A.R. 17.)

In assessing Plaintiff's residual functional capacity, the ALJ found that Plaintiff is able to "lift/carry 10 pounds frequently, lift/carry 20 pounds occasionally; stand/walk two hours per eight-hour day with a sit-stand option, sit six hours per eight-hour day, and perform simple repetitive tasks in a nonpublic setting." (A.R. 19.) The ALJ also found that Plaintiff has no past relevant work. (A.R. 20.) Based on his residual functional capacity assessment and the testimony of the vocational expert, as well as considering Plaintiff's age, education, and work experience, the ALJ found that Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (A.R. 21.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue. (*Id.*)

///

///

///

3

1

**STANDARD OF REVIEW**

2

3       This Court reviews the Commissioner's decision to determine
4   whether it is free from legal error and supported by substantial
5   evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
6   Commissioner's decision must stand if it is supported by substantial
7   evidence and applies the appropriate legal standards.  Saelee v. Chater,
8   94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than
9   a mere scintilla but less than a preponderance -- it is such relevant
10  evidence that a reasonable mind might accept as adequate to support the
11  conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

12

13      Although this Court cannot substitute its discretion for that of
14  the Commissioner, this Court nonetheless must review the record as a
15  whole, "weighing both the evidence that supports and the evidence that
16  detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y.
17  of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988); *see*
18  *also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
19  responsible for determining credibility, resolving conflicts in medical
20  testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d
21  1035, 1039-40 (9th Cir. 1995).  This Court must uphold the
22  Commissioner's decision if it is supported by substantial evidence and
23  free from legal error, even when the record reasonably supports more
24  than one rational interpretation of the evidence.  *Id.* at 1041; *see also*
25  Morgan v. Comm'r. of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.
26  1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

27

28

4

**DISCUSSION**

Plaintiff frames her two issues as follows: <u>First</u>, she contends that the ALJ misinterpreted the record regarding Plaintiff's diagnosis of fibromyalgia. <u>Second</u>, she alleges that the ALJ did not properly consider the treating physician's opinion of disability. (Joint Stipulation ("Joint Stip.") at 2.)

**A.   <u>The ALJ Erred In Determining That Plaintiff's Alleged Fibromyalgia Was Not Severe</u>.**

As noted above, the ALJ found that Plaintiff's alleged fibromyalgia was not severe. (A.R. 18.)  The ALJ reasoned as follows:

> At the hearing, [Plaintiff] alleged disabling fibromyalgia, and said Dr. Spiedel had diagnosed her with this condition. In contrast to this assertion, the record establishes that Sandra Spiedel, *a nurse practitioner* affiliated with Dr. Barrett's office, reported tender points consistent with fibromyalgia (Exhibit 2F/5). Pursuant to 20 CFR 416.913, Ms. Spiedel is not an acceptable medical source and her diagnosis cannot serve to establish the existence of a medically determinable impairment. Moreover, the diagnosis is inconsistent with the record as a whole. Because the record does not establish that an acceptable medical source has diagnosed [Plaintiff] with a medically determinable impairment, the undersigned finds that [Plaintiff's] alleged fibromyalgia is not "severe" as defined in the Regulations.

5

1  (A.R. 18; emphasis in original).

2

3      However, as Plaintiff correctly points out, at least two

4  "acceptable medical sources," *i.e.*, Dr. Barrett and Dr. Mueller, have

5  diagnosed Plaintiff with fibromyalgia. (Joint Stip. at 3.)  Indeed, the

6  record contains two medical reports that diagnose Plaintiff with

7  fibromyalgia, one of which is signed by Dr. Barrett, and the other is

8  signed by both Ms. Spiedel and Dr. Barrett. (A.R. 132, 134.)  Moreover,

9  as discussed below, the ALJ's finding that "Ms. Spiedel [was] not an

10  acceptable medical source" (A.R. 18) was erroneous.

11

12      The pertinent regulation -- 20 C.F.R. § 416.913(a) -- defines

13  acceptable medical sources as licensed physicians, psychologists,

14  optometrists, and podiatrists, and qualified speech-language

15  pathologists; nurse practitioners are not included in this list.

16  However, the Ninth Circuit has held that "a nurse practitioner working

17  in conjunction with a physician constitutes an acceptable medical

18  source, while a nurse practitioner working on his or her own does not."

19  Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996).  The Ninth Circuit

20  reasoned that, because the nurse practitioner worked closely under the

21  doctor's supervision, she acted as his agent and her "opinion was

22  properly considered as part of the opinion of" the doctor. *Id.*

23

24      Here, the evidence establishes that nurse practitioner Ms. Spiedel

25  worked under Dr. Barrett's supervision.[2] (A.R. 132-34.)  Moreover, the

26

27      [2]  Because the medical reports were signed by both Ms. Spiedel

28  and Dr. Barrett, and because Ms. Spiedel mentioned in her reports that
   "Dr. Barrett agrees and concurs," it is appropriate to make an inference

1  record also contains sufficient evidence to show that Ms. Spiedel was
2  closely supervised by Dr. Mueller and Dr. Vizcarra.  On a number of
3  occasions, Ms. Spiedel made notes on Plaintiff's medical reports
4  stating, for example, "per consultation [with Dr. Vizcarra]" or "per Dr.
5  Mueller's suggestion." (A.R. 198, 204-05, 209.)  Such entries indicate
6  that Ms. Spiedel was consulting with Dr. Mueller and Dr. Vizcarra
7  regarding Plaintiff's diagnoses and treatment.  This conclusion is also
8  reinforced by the fact that the majority of medical reports signed by
9  Ms. Spiedel bear the stamped names of either Dr. Mueller or Dr.
10  Vizcarra.

11

12      Significantly, the ALJ relied on portions of Ms. Spiedel's notes
13  regarding Plaintiff's condition and treatment as a basis for rejecting
14  Plaintiff's disability claim.  For example, when assessing Plaintiff's
15  residual functional capacity, the ALJ noted that, while Plaintiff's
16  impairments could be expected to cause some pain, he opined that her
17  pain was "stable and controlled" based on Ms. Spiedel's note (which the
18  ALJ characterized as a description by Plaintiff's "treating
19  physician").[3] (A.R. 19.)

20

21      Further, the ALJ relied on another notation by Ms. Spiedel to
22  reject the testimony of Plaintiff's sister, Ms. Teves. (A.R. 17.)  In
23  an attempt to show that Ms. Teves' testimony regarding Plaintiff's
24  inability to do activities was inconsistent with Plaintiff's medical

25  _____

26  that Ms. Spiedel worked under Dr. Barrett's supervision. (A.R. 133-34.)

27      [3]   This note was handwritten by Ms. Spiedel on the prescription
    pad of Plaintiff's treating physician, Dr. Vizcarra, and is signed only
28  by Ms. Spiedel. (A.R. 254.)

7

reports, the ALJ stated:  "This latter allegation is inconsistent with [Plaintiff's] reports and in particular a May 13, 2004 treatment note from Dr. Vizcarra indicating [Plaintiff] is able to exercise and do activities of daily living (Exhibit 13F/36)."  (A.R. 17.)  The record shows, however, that what the ALJ refers to as "a May 13, 2004 treatment note from Dr. Vizcarra" is yet another report signed by Ms. Spiedel that has Dr. Vizcarra's name stamped on it.  (A.R. 227.)  Thus, the ALJ uses medical notes and reports signed by Ms. Spiedel to support some parts of his decision, but he inconsistently rejects other similar notes regarding Plaintiff's fibromyalgia on the ground that Ms. Spiedel's opinions are not entitled to credence, because she is not an acceptable medical source.  The ALJ's selective use of a portion of Ms. Spiedel's assessment in order to reach a conclusion of no disability, while disregarding the remainder that detracted from that conclusion, was improper and constitutes legal error.  *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 723 (9th Cir. 1998)(the ALJ's development of an evidentiary basis for his conclusion that the claimant exaggerated her symptoms, by not fully accounting for the context of materials and for all parts of the testimony and reports, held to be reversible error)

The ALJ has a duty to develop the record fully and fairly. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001); <u>Smolen</u>, 80 F.3d at 1288.  The ALJ's duty to develop the record is clearly triggered when the record is ambiguous. <u>Tonapetyan</u>, 242 F.3d at 1150.  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

Plaintiff alleged that she suffered from fibromyalgia and that it was one of the causes of her disability. (A.R. 119, 278.) The ALJ was presented with numerous medical reports and notes from Plaintiff's treating physicians and Ms. Spiedel who diagnosed Plaintiff with fibromyalgia.[4] (A.R. 132, 134, 135, 193, 231, 245, 246, 250.) Fibromyalgia is a disease that may incapacitate a person,[5] rendering him or her disabled. If the ALJ had doubts whether the medical reports diagnosing Plaintiff with fibromyalgia were coming from an acceptable medical source, the ALJ was required to conduct a further inquiry and develop the record regarding Plaintiff's alleged fibromyalgia. For example, the ALJ could have contacted Plaintiff's treating physicians, Dr. Vizcarra, Dr. Mueller, and Dr. Barrett, to obtain more complete explanations regarding the nature and extent of Plaintiff's allegedly disabling fibromyalgia.

Moreover, Plaintiff's complaints regarding her fibromyalgia should have been assessed by a rheumatologist, *i.e.,* the relevant specialist for the diagnosis and treatment of fibromyalgia. *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 594 n.4 (9th Cir. 2004)(stating that opinion of

---

[4]     Many of these reports and treatment notes specifically mention that Plaintiff has more than 11 multiple tender points (out of 18) which is a sign of fibromyalgia, as described *infra* in footnote 5. (A.R. 135, 193, 216, 220, 230, 231.)

[5]     Fibromyalgia, also known as fibrositis, is a common but elusive and mysterious disease much like chronic fatigue. <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996). "The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender points that when firmly pressed cause the patient to flinch (the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia)." *Id.* "Some people may have such a severe case of fibromyalgia as to be totally disabled from working." *Id.* at 307 (citations omitted).

specialist about medical issues related to that specialist's area of specialty is to be given greater weight, and that rheumatology is relevant specialty for fibromyalgia).  The record shows that the ALJ directed Plaintiff to be examined by consultative examiners specializing in orthopedics and psychiatry (apparently for determining Plaintiff's allegations of back and leg injuries, as well as her allegations of depression and anxiety).  (A.R. 155, 169.)  However, the ALJ failed to direct that Plaintiff be examined by a rheumatologist, despite the evidence of record that Plaintiff may be disabled because of fibromyalgia. The ALJ neither contacted Plaintiff's treating physicians nor obtained an opinion of an examining rheumatologist regarding Plaintiff's alleged fibromyalgia, thereby failing to develop the record fully and fairly. Therefore, the case should be remanded to the Commissioner for appropriate development of the record.

**B.   <u>Plaintiff Failed To Show Good Cause For Her Failure To Submit Additional Evidence Before The ALJ Issued His Decision</u>.**

Plaintiff next complains that the ALJ failed to consider her treating physician's opinion of disability. (Joint Stip. at 5.)  Her argument primarily concerns a medical report[6] that was not before the ALJ at the hearing and was submitted to the Appeals Council as additional evidence. (Joint Stip. at 6.)  Plaintiff contends that the Appeals Council erred by concluding that the additional evidence submitted by Plaintiff "does not provide a basis for changing the [ALJ's] decision." (A.R. 6.)  Defendant correctly asserts that, for

---

[6]   This March 12, 2004 medical opinion was signed by Ms. Spiedel and has Dr. Vizcarra's name stamped on it. (A.R. 268.)

10

Plaintiff's additional evidence to be accepted and properly considered, Plaintiff must show that the additional evidence was material and that there was good cause for not submitting it to the ALJ earlier. (Joint Stip. at 7.)

The additional evidence introduced to the Appeals Council was a medical opinion stating that Plaintiff was "incapacitated from work." (A.R. 268.)   The opinion explains "how [Plaintiff's] physical/mental ability is substantially reduced by [her] incapacity," and states that "pain prevents [Plaintiff] from doing even normal activities." (*Id.*) An opinion about Plaintiff's disability, with explanations underlying the conclusion that she is disabled, is evidence that could "have changed the outcome" of Plaintiff's disability determination, because it is not a mere treatment note but rather an opinion that defines Plaintiff as disabled.  Therefore, the additional evidence presented by Plaintiff to the Appeals Council, *i.e.*, the medical opinion from March 12, 2004, is material.[7]  *See* <u>Booz v. Sec'y. of Health & Human Services</u>, 734 F.2d 1378, 1380 (9th Cir. 1984)(holding that additional evidence is sufficiently material to require remand if "there is reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him").

---

[7]    Defendant argues that this additional evidence is not material, because it is not signed by an acceptable medical source. (Joint Stip. at 9.)   *If* Ms. Spiedel may be considered an acceptable medical source for purposes of this specific opinion, then the opinion clearly is material.  The record, however, does not provide a basis for resolving that issue.  Accordingly, on remand, the ALJ should further develop the record to establish whether Ms. Spiedel was indeed supervised by and consulting with Dr. Vizcarra and Dr. Mueller in connection with the March 12, 2004 opinion she signed.

Generally, a claimant also must show that there was good cause for not submitting the additional evidence before the ALJ issued his decision.  *See* <u>Clem v. Sullivan</u>, 894 F.2d 328, 332 (9th Cir. 1990) (declining to remand case for consideration of new evidence, because claimant's assertion that evidence turned up later is not sufficient to explain why it was not produced earlier in proceeding and did not constitute good cause).  Defendant correctly observes that the "new" opinion evidence, which was completed on March 12, 2004, predates the ALJ's decision by two years.  (A.R. 14-21, 268.)  Thus, Plaintiff had many opportunities to submit the opinion at issue to the ALJ.  In fact, Plaintiff submitted a number of additional documents to the ALJ on November 8, 2005, but failed to include the opinion with these additional documents.  (A.R. 240-55.)  In addition, Plaintiff gives no explanation for its late submission.  Therefore, absent other error in the ALJ's decision, this case would not be remanded for reconsideration because of this additional evidence.

However, because the present case is being remanded for further development of the record anyhow, the disability opinion at issue here can and should be considered as part of the further and fuller development of the record.

**C.    <u>Remand Is Required</u>.**

Here, remand is appropriate to allow the ALJ the opportunity to develop the record fully and fairly.  *See* <u>Tonapetyan</u>, 242 F.3d at 1151 (case remanded to Commissioner for further administrative proceedings because of ALJ's failure to develop record fully and fairly).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 16, 2007

                                                    /s/
_____   _____
                                  MARGARET A. NAGLE
                                  UNITED STATES MAGISTRATE JUDGE

13